**CITY OF WENATCHEE and Chelan County, Plaintiffs,**

v.

**UNITED STATES of America, Federal Emergency Management Agency and Gloria M. Jiminez, Defendants.**

**No. C–80–396–RJM.**

United States District Court, E. D. Washington.

Sept. 4, 1981.

James B. Drewelow of Carlson, Drewelow & Arch, Wenatchee, Wash., for plaintiffs.

James J. Gillespie, U. S. Atty., Carroll D. Gray, Asst. U. S. Atty., Spokane, Wash., Stuart C. Schiffer, Acting Asst. Atty. Gen., Keith M. Werhan, Paul Gaukler, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM ORDER

ROBERT J. McNICHOLS, Chief Judge.

■ This civil action for judicial review of the Federal Emergency Management Agency's (Agency) flood elevation determination is before the Court on defendants' Motion for Summary Judgment. The parties concede that there are no genuine issues of material fact. Since I cannot substitute my judgment for that of the Agency and since the Agency's decision is entitled to a presumption of validity, the sole substantive issue is whether the plaintiffs have demonstrated that the initial agency determination was scientifically or technically incorrect. In addition to the substantive issue, I must determine two procedural questions: (1) Are the plaintiffs entitled to an administrative hearing and (2) Is Dames & Moore an "independent scientific body" within the meaning of 42 U.S.C. § 4104(e) (1977). The plaintiffs' contentions are roughly the same as the aforementioned issues. The city and county contend that: (1) they have been denied their Fifth Amendment due process right to a full administrative hearing, (2) submittal of their appeal to David Dawdy of Dames & Moore did not constitute submission of the appeal to an "independent scientific body" as required by law, and (3) the agency's decision was arbitrary and capricious.

## ADMINISTRATIVE HEARING

The plaintiffs are not entitled to an administrative hearing. Congress has given the agency the option of resolving an appeal by: (1) consultation with local government, (2) an administrative hearing, or (3) reference to an independent scientific body or other government agency. 42 U.S.C. § 4104(e) (1977). I cannot restrict the Agency to the second option, an administrative hearing, unless I am convinced that Congress' provision for the two other options is unconstitutional.

■ The plaintiffs have failed to overcome the presumption that the statute is constitutional. Their due process right to an administrative hearing does not arise unless they demonstrate that the action was adjudicatory in nature and the Agency fact finding procedure is inadequate. Since the Agency action was quasi-legislative in nature and not adjudicatory in nature, the plaintiffs are not entitled to an administrative hearing. Moreover, the fact finding procedure was adequate.

My determination that the plaintiffs are not entitled to an administrative hearing is in accord with other courts' positions. *Texas Landowners Rights Association v. Harris*, 453 F.Supp. 1025 (D.D.C.1978), *aff'd per curiam*, 598 F.2d 311 (D.C.Cir.1979), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1980). Despite plaintiffs' efforts to distinguish *Texas Landowners Rights Association v. Harris*, a careful reading of that case indicates that the due process issue was presented to and considered by that court. That court found that the agency's actions "fit well within the quasi-legislative decision making process." *Texas Landowners Rights Association v. Harris, supra*, at 1032–33. Moreover, the court questioned whether the plaintiffs had stated a due process claim for a deprivation of property because the agency sanctions did not foreclose other non-federal sources of funds for insurance.

## INDEPENDENT SCIENTIFIC BODY

The plaintiffs have not convinced me that Dames & Moore is not an "independent scientific body" within the meaning of 42 U.S.C. § 4104(e). In order to hold for the plaintiffs I must either hold that: (1) Dames & Moore does not fit within the definition of an independent scientific body, contained in 44 C.F.R. § 59.1 (1980), (2) the regulation is invalid or (3) Dames & Moore, because of its position, did not exercise its independent professional judgment.

■ While the statute does not define an "independent scientific body" the Agency's regulations define it as a "nonfederal technical or scientific organization involved in the study of land use planning ... or any other related field of study concerned with flooding." 44 C.F.R. § 59.1. While Dames & Moore is clearly within the defini-

tion, the plaintiffs contend that the definition is self serving. Such an allegation does not provide a sufficiently compelling reason to ignore the great deference which is generally accorded an agency's interpretation of a statute. *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *accord Red Lion Broadcasting Company v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

Finally, the plaintiffs contend that Dames & Moore is not an independent scientific body because: (1) it was involved in the initial study, (2) it may feel compelled to affirm the Corps of Engineers (Corps) decision for fear of the Corps' reversal on some subsequent project where Dames & Moore will make an initial determination of flood levels, and (3) it had the appearance of a financial interest. My review of the file and record coupled with my consideration of the parties' arguments leads me to the conclusion that plaintiffs have done little more than cast unsubstantiated aspersions on the integrity of Dames & Moore's conclusions.

Since the primary issue on appeal was the Corps "rainfall run-off model" and since Dames & Moore had no interest in the validity of the model, Dames & Moore's involvement in the initial flood elevation determination was minimal and does not jeopardize their status as an independent scientific body. Even assuming prior involvement, since the decision was not made in an adjudicative proceeding, section 554 of the Administrative Procedures Act, 5 U.S.C. § 554 (1977), does not apply. Thus, the statute does not preclude Dames & Moore from a later role as a decision maker. Also, the plaintiffs have not overcome the presumption of honesty and integrity accorded to decision makers. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). The plaintiffs have provided no evidence that Dames & Moore feared retaliation by the Corps. Finally, Dames & Moore lacks the clear financial stake that existed in the plaintiffs' cited authority. *United States v. Aquavella*, 615 F.2d 12 (1st Cir. 1980), *Meyer v. Niles Township, Illinois*, 477 F.Supp. 357 (1979).

Furthermore, Dames & Moore, as experts in their field and without a vested interest in the flood boundaries, are not unlike a doctor who, as a medical expert without a vested interest, assists a Social Security hearing officer in determining the boundaries of physical and mental disabilities. Just as the courts cannot and do not ascribe bias to the work of an independent dedicated medical professional, *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), I cannot ascribe bias to a private professional engineering firm without adequate evidence of such bias. The plaintiffs uncorroborated speculation about Dames & Moore does not constitute even minimal evidence of bias. Finally, if Dames & Moore has a financial interest, it is in maintaining and protecting its professional integrity.

In short, the plaintiffs have failed to demonstrate that Dames & Moore is not an "independent scientific body."

## AGENCY DECISION

The scope of review on the substantive issue of the Agency's determination is regulated by the Administrative Procedure Act. 42 U.S.C. § 4104(g), 5 U.S.C. § 706. Since the plaintiffs seek review of the Agency's decision because they contend that it was arbitrary and capricious, 5 U.S.C. § 706(2)(A), my inquiry is limited to: (1) whether the Agency's decision was based on a consideration of relative factors, and (2) whether there was a clear error of judgment. *Washington State Farm Bureau v. Marshall*, 625 F.2d 296 (9th Cir. 1980). I must affirm the Agency's decision if there is a reasonable basis for the decision. *Id.* The plaintiffs contend that the Agency failed to consider two relevant factors: (1) submitted scientific and technical data, and (2) community experience with floods. A review of the Agency's briefs indicates that both the scientific/technical data and the community experience were considered. The Agency's initial brief, at pp. 28–33, outlined the four major scientific challenges and David Dawdy's response to these challenges. Although I am not a hydrologist,

Mr. Dawdy's remarks suggest full consideration and reasonable responses to each of these challenges. Indeed, his responses suggest that the Corps might have applied stricter flood elevations. While Mr. Dawdy's response to Dr. Vogel's assertion that the Corps' rainfall run-off model's volume of 2,250 CFS would have resulted in 178 floods in the last 100 years was not as complete as it might have been, I note that Dames & Moore demonstrated that the plaintiffs' alternative proposed rainfall run-off model would have underestimated the total number of *actual* floods by a factor of 3 to 5.

It also appears that the community experience factor received extensive consideration. Agency's Reply Br., at pp. 31–34. In addition to considering the plaintiffs' position that the 1957 flood represented the worst flood, the Agency's independent consultant in the 1977 effort determined, by interviews with local residents, that the City of Wenatchee has been subjected to three other floods (1907, 1915 and 1940) which were actually larger than the 1957 flood.

In summary, it appears that the Agency and its independent consultants did consider the community scientific data and the community experience. Although there may be doubts about both sides' rainfall run-off models, the Corps' model seems more reasonable. Thus, this is not an appropriate case for remand for a fuller consideration, particularly, where, as here, there appears to be an extensive consideration of the community data and experience. Since the Agency acted according to law and based its decision on reasonable grounds, its decision should be affirmed.

I can understand and perhaps sympathize with the concerns of the plaintiffs. However, Congress has established a program and placed responsibility for its implementation with the Agency. On the facts of this case, it would be an unwarranted intrusion by the Court to interfere. Therefore,

IT IS ORDERED that defendants' Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' Cross-motion for Summary Judgment is DENIED.