FALLS CHASE SPECIAL TAXING
DISTRICT, Plaintiff,

v.

DIRECTOR, FEDERAL EMERGENCY
MANAGEMENT AGENCY, Defendant.

No. TCA 82–962.

United States District Court,
N.D. Florida,
Tallahassee Division.

July 22, 1983.

J.C. Osteen, Segundo J. Fernandez, Tallahassee, Fla., for plaintiff.

Kevin M. Moore, Asst. U.S. Atty., Tallahassee, Fla., Andrea Newmark, Dept. of Justice, Washington, D.C., for defendant.

## ORDER

PAUL, District Judge.

Defendant's motion for summary judgment (Doc 26) is GRANTED.

Plaintiff brought this suit challenging the Federal Emergency Management Agency's (FEMA) determination of the base flood elevation for the Lake Lafayette area within plaintiff's district. The facts, as follows, are not in dispute:

At the request of Leon County officials, defendant Federal Emergency Management Agency (FEMA) agreed to set a base flood elevation for the Lake Lafayette area in plaintiff's district located in Leon County.

The Water Resources Division of the United States Geological Survey ("USGS") established the requested elevation for FEMA, and it was included in the revised preliminary Flood Insurance Study, and on the preliminary Flood Rate Insurance Maps, presented to the community. (R. 2)

The proposed base flood elevation was published in the Federal Register on October 16, 1981 (R. 17) and in the Tallahassee Democrat on November 20, 1981. (R. 18)

Lake Lafayette is a solution basin, which contains a sinkhole, and is therefore subject to great fluctuations in water level. (R. 113)

No gaging records, and little historical or other confirmed data, existed for Lake Lafayette at the time USGS conducted its analysis. (R. 145, 257, 278–79)

The absence of gaging records precluded a direct frequency analysis of the Lake, and the presence of the sinkhole and lack of historical or other confirmed date regarding the sinkhole's affect on the water level rendered a routing analysis impracticable and unreliable. (R. 145, 257, 278–79)

USGS conducted its analysis using the best available data which included a peak discharge frequency analysis of data from nearby gaging stations which indicated that an August 1948 storm was comparable to the 100-year flood measurement made for neighboring areas (R. 145); records of the State Road Department of Florida reflected that, during the August 1948 storm, Lake Lafayette was also at flood level and overtopped the adjacent railway (R 67); and USGS survey data showed the lowest elevation of the railway to be 51.6 feet at the bridge. (R 63) It determined the appropriate base flood elevation for Lake Lafayette to be 51 feet. USGS considered the effect of dams built on the Lake since the 1948 flood, and concluded that since the highest dam was only 48.43 feet, they would be overtopped during the 100-year flood and thus not change the water surface elevation. (R. 144)

On February 17, 1981, plaintiff filed an administrative appeal of the proposed base flood elevation, criticising the methodology used by USGS and challenging the accuracy of the underlying data.

Plaintiff submitted documents indicating that the vegetation line for Lake Lafayette is 45.47 feet; that a water stain existed on the bridge at 46.4 feet; that dams had been built on the Lake since the August 1948 storm; that the elevation of the railroad bridge was 51.6 feet in 1976; that the Lake was flooded in August 1948 and overtopped the railway; and that Hurricane Bob in 1979 also cause flooding conditions. (R. 45–69)

FEMA consulted plaintiff concerning the appeal on August 11, 1981. In a detailed

letter, FEMA explained that the sole basis of an appeal was the possession of scientific or technical data negating the validity of the proposed base flood elevation. It further explained that none of the material submitted with the appeal contradicted the 51 foot proposed base flood elevation; that the vegetation line represents the "ordinary high water level", not the water level during a 100-year flood event; that the stain on the bridge was from a 1973 storm which had a recurrence interval of 10–40 years and not 100 years; that USGS had considered the effect of the dams and concluded that the Lake would be one continuous body of water during a 100-year flood event; and that Hurricane Bob was not a major storm. Since none of this information negated the validity of the proposed base flood elevation, FEMA invited plaintiff to submit additional information. It specified the kinds of data which would be acceptable: survey information showing that the elevation of the railroad bridge was not 51.6 feet in 1948, technical data establishing that the dams would not be overtopped during a 100-year flood event, and a technical evaluation of the function of the sinkhole. (R. 183–86)

On September 10, 1981, plaintiff submitted to the agency a letter written by C.F. Haines, Hydrologist, Inc., containing his view of the optimal methodology for establishing a base flood elevation for Lake Lafayette, and an affidavit of James Carter, District Manager of the plaintiff district describing a conversation with a representative of the railroad in which he was told that the railroad bridge had been replaced, possibly at a higher elevation, in 1963. The affidavit explained that it was being offered only because plaintiff had not had time to provide the precise information requested. (R 193–96)

Plaintiff asked for an opportunity to present additional data and requested that the agency communicate further with plaintiff's hydrological consultant. (R. 195–96).

FEMA agreed, and on October 21, 1981, informed the County that it was re-issuing its public notice and re-starting the 90-day appeal period thereby affording plaintiff a second opportunity for review. (R. 209–10)

Plaintiff filed an amended appeal on January 20, 1982, which was virtually identical to its first appeal, except for the addition of the C.F. Hains letter and Carter Affidavit as exhibits. No additional technical or scientific data was presented. (R. 221–66)

In April and May of 1982, FEMA's technical contractor discussed in detail the technical aspects of the appeal and the claims raised by the plaintiff. During the course of these conversations, they discussed the paucity of information available and the lack of any long-term gage readings for the Lake, and the fact that a routing analysis would be extremely difficult and questionably reliable for that reason. They also discussed plaintiff's failure to provide the data which FEMA had advised was necessary to contradict the proposed base flood elevation. FEMA's contractor responded to each of the concerns expressed by plaintiff's hydrologist. Plaintiff's hydrologist did not present any additional data or arguments which warranted a change in FEMA's position, as expressed in its August 11, 1981 letter. (R. 278–79, 281–83, 287–89)

On May 11, 1982, FEMA informed the plaintiff that it was denying the appeal. The agency again explained its reasons, all of which had been communicated to the plaintiff and discussed with its hydrologist and responded to each of the claims raised in the appeal. Plaintiff was advised that FEMA would accept additional or new data at any time, and, if appropriate, revise the base flood elevation accordingly. (R. 284–86)

Plaintiff then instituted this action for judicial review of FEMA's denial of their appeal of the agency's base flood elevation determination for plaintiff's district under 42 U.S.C. § 4104.

Plaintiff presents three arguments to the court; that FEMA failed to follow statutory procedures for the appeal; that the agency's action is unsupported by the evidence and hence is arbitrary and capricious;

and lastly, plaintiff requests a de novo review of the agency's determination.

■ To begin with, plaintiff is not entitled to a de novo hearing; De novo review of agency action in the district court is appropriate only where the agency action is adjudicatory in nature and the agency fact-finding procedure inadequate, or where judicial proceedings are brought to enforce certain administrative actions, none of which are present here. *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Since flood elevation determinations are not adjudicatory, *Texas Landowners Ass'n v. Harris*, 453 F.Supp. 1025 (D.O.C.1978) *aff'd per curiam*, 598 F.2d 311 (D.C.Cir. 1979) *cert. den.*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1980), a de novo hearing would not be appropriate in this case.

Plaintiff's argument that FEMA failed to follow statutory procedures in processing their appeal is also without merit. The statutory framework regarding base flood elevation determinations provides three alternate means for an administrative appeal. 42 U.S.C. § 4104(e) provides that upon receiving an appeal, FEMA may resolve it by (1) consultation with local government officials, or (2) holding an administrative hearing, or (3) submitting any conflicting data to an independent body or appropriate federal agency for review.

In this case FEMA chose to resolve plaintiff's appeal by utilizing option (1), consultation with local government officials. Plaintiff does not contest that FEMA did in fact consult with Leon County officials regarding their base flood elevation determination for the Lake Lafayette area. Rather, they only argue that FEMA "should have" utilized option (2) or (3) and that their failure to explain the reasons for choosing option (1) somehow invalidates the resolution of their appeal.

■ Plaintiffs are clearly mistaken. The agency may resolve an administrative appeal by any one of the three options provided for by Congress, 42 U.S.C. § 4104(e). *City of Wenatchee v. FEMA*, 526 F.Supp. 439 (E.D.Wash.1981).

■ Lastly, plaintiff argues that the agency's determination of the base flood elevation is arbitrary and capricious. This contention is likewise without merit. The scope of review for cases brought pursuant to 42 U.S.C. § 4104 is governed by the standards in the Administrative Procedures Act. 5 U.S.C. § 706, 42 U.S.C. § 4104(g). Under the APA the sole inquiry is whether the agency's action was arbitrary and capricious. *Roberts v. Sec. Dept. Housing & Urban Development*, 473 F.Supp. 52 (N.D. Miss.1979); *City of Wenatchee v. FEMA*, 526 F.Supp. 439 (E.D.Wash.1981).

■ Whether an agency's decision is arbitrary and capricious depends on whether there was a clear error of law or fact or whether the decision was made after consideration of all relevant factors. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 416, 91 S.Ct. at 823.

■ Furthermore, the district court may not substitute its judgment for that of the agency, *Citizens to Preserve Overton Park, supra*, particularly when the agency has expertise in the area and the decision was based upon technical and scientific data. *Cayman Turtle Farm, Ltd. v. Andrus*, 478 F.Supp. 125 (D.D.Cir.1979); *Mision Industrial, Inc. v. E.P.A.*, 547 F.2d 123 (1st Cir.1976); *Roberts v. HUD*, 473 F.Supp. 52 (N.D.Miss.1979).

The parties do not dispute that the base flood elevation determination was based on scientific and technical data certainly within the agency's area of expertise. Throughout the entire course of the proceedings below FEMA has contended that plaintiff has failed to come forward with any significant technical or scientific data to refute the methadology or data used by the Water Resources Division of the United States Geological Survey relief upon by FEMA in making their determination.

In open court, counsel for FEMA represented to the Court that they have informed plaintiff that if at any time plaintiff secures information which refutes the data relied upon by FEMA in making their base

flood elevation determination, such information will be considered and the base flood elevation determination modified as necessary or appropriate.

Instead of coming forward with this type of information plaintiff complains that it is the agency's responsibility to conduct studies of surveys to refute their own determination. This is clearly not the case. The burden of coming forward rests squarely with the plaintiff.

■ Since plaintiff has been unable or unwilling to demonstrate that the historical information used by USGS and FEMA was inaccurate or improper, the Court finds that the defendant agency's determination of the base flood elevation for the Lake Lafayette area is supported by competent substantial evidence, is not arbitrary or capricious and should not be disturbed by this Court.

Accordingly, it is ORDERED:

1. Defendants motion for summary judgment (Doc 26) is GRANTED.

2. Defendant is to prepare and submit a final judgment that plaintiff take nothing and that this action is dismissed with prejudice.