

# The Attorney General of Texas

June 21, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Carlos Valdez
Nueces County Attorney
Courthouse, Room 205
Corpus Christi, Texas    78401

Opinion No.  JM-328

Re:  Whether regulations enacted
pursuant to article 1581e-1
V.T.C.S., and sections 16.311
et seq., of the Texas Water Code
constitute a taking of land

Dear Mr. Valdez:

The legislature enacted article 1581e-1, V.T.C.S., because :
recognized

> the personal hardships and economic distress
> caused by flood disasters since it has become
> uneconomical for the private insurance industry
> alone to make flood insurance available to those
> in need of such protection on reasonable terms and
> conditions.

Sec. 1. The purpose of article 1581e-1 was to enable Gulf Coa:
counties to participate in the National Flood Insurance Act of 1968
42 U.S.C. §4001, et seq.  Id.; see also Tex. Water Code §16.311, :
seq.; Attorney General Opinions JM-123 (1983); MW-171 (1980); H-10:
(1977).  This federal act makes flood insurance available throu;
coordinated efforts of the federal government and the priva:
insurance industry — but only when state and local governments comp:
with certain federal standards.  42 U.S.C. §§4022, 4012(c) (1982); s:
Texas Landowners Rights Ass'n v. Harris, 453 F. Supp. 1025, 1027-:
(D.D.C. 1978), aff'd, 598 F.2d 311 (D.C. Cir. 1979), cert. denied, 4:
U.S. 927.  Additionally, several other types of federal financi:
assistance, including VA and FHA insured mortgages, HUD communi:
development block grants, and disaster assistance, may not :
available in flood hazard areas of non-complying communities.  :
U.S.C. §4012a; see 42 U.S.C. §4003(a)(4); see also Texas Landowne:
Rights Ass'n v. Harris, supra, at 1028.

Pursuant to the National Flood Insurance Act of 1968, as amend:
by the Flood Disaster Protection Act of 1973, 42 U.S.C. §4001 et seq
the Federal Emergency Management Agency holds authority to ado;
regulations which condition a locality's participation in the Nation:
Flood Insurance Program.  See 42 U.S.C. §4012(c); 44 C.F.R. §60.1(a:

The regulation about which you inquire provides that a participating community shall, among other things,

> [p]rohibit encroachments, including fill, new construction, substantial improvements, and other development within the adopted regulatory floodway that would result in _any increase_ in flood levels within the community during the occurrence of the base flood discharge. (Emphasis added).

44 C.F.R. §60.3(d)(3).

Your office contends that the wording of this provision must be taken as a blanket prohibition of any development in flood hazard areas. Accordingly, you ask whether the passage and enforcement by the county of land use regulations with this prohibition, pursuant to article 1581e-1, V.T.C.S., and sections 16.311 through 16.319 of the Texas Water Code, constitute a taking of land without compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution. You also ask whether application of this flood hazard regulation to only portions of the total number of flood hazard areas violates the Equal Protection Clause of the Fourteenth Amendment. A number of prior opinions of this office considered various aspects of counties' participation in the National Flood Insurance Program. See Attorney General Opinions JM-123 (1983); MW-171 (1980); H-1102, H-1024, H-1011, H-978 (1977). Several of these opinions dealt specifically with article 1581e-1, but none addressed the constitutional issue raised by your request. See Attorney General Opinions JM-123; MW-171; H-1024.

As a preliminary matter, it is not entirely clear that the federal regulation in question requires the county to prohibit "all" development in federally designated floodways. The Supreme Court of North Carolina recently considered the validity of a local land use ordinance for flood hazard areas which was enacted in order to comply with the National Flood Insurance Program. See Responsible Citizens in Opposition to the Flood Plain Ordinance v. City of Asheville, 302 S.E.2d 204 (N.C. 1983). The ordinance, in language almost identical to that in issue here, prohibited all fill, new construction, and substantial improvements except those that "shall not result in _any increase_ of the regulatory flood [level] during occurrence of the base flood discharge." Id. at 210, n. 4 (emphasis added). The court construed this language to authorize new construction or substantial improvements in a manner that prevents or minimizes any potential increase in flood damage. 302 S.E.2d at 210. You do not indicate that a particular landowner has presented evidence from an engineer that no development at all is physically possible which will not result in any increase in flood levels. You indicate that prior federal restrictions and practice generally permitted new construction if the structure was elevated on pilings. We also note that the federal regulations provide for the adoption of limited variances and

exceptions in extreme circumstances. See 44 C.F.R. §60.6. Moreover, even if new construction is not feasible, the provision in question does not necessarily prohibit all uses of property in flood hazard areas. See generally Turner v. County of Del Norte, 24 Cal. App. 3d 311, 101 Cal. Rptr. 93 (1972) (upheld limit on use under flood plain ordinance to recreation and agriculture).

Under the Fifth and Fourteenth Amendments of the United States Constitution, private property may not be "taken" in the exercise of a government's eminent domain powers without "just compensation." You do not ask about the Texas Constitution. See Tex. Const. art. I, §17; City of College Station v. Turtle Rock Corporation, 680 S.W.2d 802 (Tex. 1984); City of Austin v. Teague, 570 S.W.2d 389 (Tex. 1978). We note, however, that the Texas approach is in line with cases resolving "taking" claims under the Federal Constitution. See City of Austin v. Teague, 570 S.W.2d at 393 (balancing of public and private interests). Under certain circumstances, property may be appropriated by government action without any compensation as an exercise of the state's police power -- the power to protect the public health, safety, and welfare. See San Diego Gas & Electric Co. v. City of San Diego, 450 U.S. 621 (1980); Agins v. City of Tiburon, 447 U.S. 255 (1980); Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978); Texas Landowners Rights Ass'n v. Harris, supra. The factors usually considered in determining whether or not a taking has occurred include whether there has been a physical invasion or appropriation, the degree of diminution in the value of the claimant's land, the distinction between forcing benefits and preventing harms, and a balancing of public benefits against private losses. As the United States Supreme Court stated in Agins v. City of Tiburon, supra, "no precise rule determines when property has been taken . . . the question necessarily requires a weighing of private and public interests." Thus, what constitutes a "taking" with regard to the actual application of a local flood ordinance depends upon the facts in each particular case. Accordingly, we can only set forth what the general state of the law is in the area.

It has already been established in some jurisdictions that similar local land use regulations associated with the National Flood Insurance Program are a valid exercise of the police power and that, therefore they do not, on their face, effect a "taking." See Texas Landowners Rights Ass'n v. Harris, supra; Responsible Citizens in Opposition to the Flood Plain Ordinance v. City of Asheville, supra. Flood hazard zone regulations serve a vital purpose in protecting the people who occupy the regulated land and in protecting neighboring landowners from increased flood damage and in protecting the general public. See Turnpike Realty Co. v. Town of Dedham, 284 N.E.2d 891 (Mass. 1972), cert. denied, 409 U.S. 1108 (1973). For these reasons, they have been upheld as valid exercises of the police power. See Texas Landowners Rights Ass'n v. Harris, supra; Responsible Citizens in Opposition to the Flood Plain Ordinance v. City of Asheville, supra. Moreover, as shown above, the provision in question does not

prohibit all uses of property within a flood risk area.  Clearly some intensive uses, such as extensive new construction, may be ruled out as a practical matter.  As indicated, however, decisions of the United States Supreme Court establish that uses of land which are injurious to the public may be prohibited entirely without compensation.  In borderline cases the courts have found the existence of authorization for some remaining uses to be a significant factor in the "taking" issue.  See, e.g., Agins v. City of Tiburon, supra; Turner v. County of Del Norte, supra.  The ultimate question is whether a landowner is denied all economically viable use of his land, Agins, 447 U.S. at 260, not whether he must be able to show an immediate profit.

The fact that the authorized uses are not the "highest and best" uses or that the cost of complying with flood control land-use regulations may be financially "prohibitive" is not controlling.  See Texas Landowners Rights Ass'n v. Harris, 453 F. Supp. at 1031-32; Responsible Citizens in Opposition to the Flood Plain Ordinance v. City of Asheville, 302 S.E.2d at 210; see also Maher v. City of New Orleans, 516 F.2d 1051, 1066 (5th Cir. 1975), cert. denied, 426 U.S. 905 (1976); Jentgen v. United States, 657 F.2d 1210 (Ct. Cl. 1981), cert. denied 455 U.S. 1017 (1982); Deltona Corporation v. United States, 657 F.2d 1184 (Ct. Cl. 1981), cert. denied, 455 U.S. 1017 (1982).  Decisions of the United States Supreme Court have repeatedly upheld prohibitions of similar injurious uses and activities, to prevent harm to the public, even when the financial impact on the land in question is substantial.  See, e.g., Agins v. City of Tiburon, supra.  For example, the Supreme Court in the Penn Central case noted that it previously upheld, without requiring compensation, a 75 percent diminution in value in Euclid v. Ambler Realty Co., 272 U.S. 365 (1926), and upheld an 87½ percent diminution in value in Hadacheck v. Sebastian, 239 U.S. 394 (1915).  438 U.S. at 131; see also Texas Landowners Rights Assn'n v. Harris, 453 F. Supp. at 1032.  In many cases the landowners whose land is restricted also receive certain reciprocal benefits which increase the value of their property.  Such benefits may arise both from the fact that restrictions applicable to their neighbors protect the landowners themselves from increased flood hazards and from the availability to the landowner of flood insurance and federally-related financing.  See Responsible Citizens in Opposition to the Flood Plain Ordinance v. City of Asheville, 302 S.E.2d at 213.  That the costs of development necessary to comply with flood hazard restrictions are "prohibitive" or that the lower value of a less intensive use of land is not immediately profitable may merely indicate that a particular landowner has paid too much for land in a flood hazard area.  The Fifth and Fourteenth Amendments do not require that the government guarantee that a landowner be favored to the detriment of the public merely because he has paid a speculative price for land.  As the Supreme Court stated in Penn Central Transportation Co. v. New York City:

> [T]he submission that [landowners] may establish a
> 'taking' simply by showing that they have been

> denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable.

438 U.S. at 130; see also Andrus v. Allard, 444 U.S. 51, 65-66 (1979).

For these reasons, we conclude that adoption by the county of the federal standard for flood hazard land-use regulation in question, see 44 C.F.R. §60.3(d)(3) (quoted previously), would not on its face effect a taking. The validity of the application of a flood plain ordinance to a particular piece of property depends upon factual determinations. Numerous courts in other states have upheld similar flood zone prohibitions. See Turner v. County of Del Norte, 24 Cal. App. 3d 311, 101 Cal. Rptr. 93 (1972); Pope v. City of Atlanta, 249 S.E.2d 16 (Ga. 1978), cert. denied, 440 U.S. 936 (1979); Young Plumbing & Heating Co. v. Iowa Natural Resources Council, 276 N.W.2d 377 (Iowa 1979); Turnpike Realty Co. v. Town of Dedham, 284 N.E.2d 891 (Mass. 1972), cert. denied, 409 U.S. 1108 (1973); Subaru of New England v. Board of Appeals, 395 N.E.2d 880 (Mass. App. Ct. 1979); Usdin v. State Department of Environmental Protection, 414 A.2d 280 (N.J. Super. Ct. Law Div. 1980), aff'd, 430 A.2d 949 (N.J. Super. Ct. App. Div. 1981); Maple Leaf Investors, Inc. v. State Department of Ecology, 565 P.2d 1162 (Wash. 1977). See also Graham v. Estuary Properties, Inc., 399 So. 2d 1374 (Fla. 1981), cert. denied, 454 U.S. 1083 (1981).

You also indicate that the proposed regulation would apply only to flood hazard areas on the Nueces River which are designated by the Federal Emergency Management Agency and that the Agency plans to designate only a portion of the total number of flood hazard areas at a time. Because this may result in differing treatment of landowners who are similarly situated, you ask whether such partial regulation violates the Equal Protection Clause of the Fourteenth Amendment.

We note as a prefatory matter that Gulf Coast counties are not limited in their enactment and enforcement of flood hazard regulations to areas which have been designated as flood hazard areas by the Federal Emergency Management Agency. Counties hold only those powers and duties that are specifically or by necessary implication conferred on them. Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948). As initially enacted, the Flood Control and Insurance Act granted only limited powers to counties. See Tex. Water Code §16.311 et seq. This office previously concluded that this act authorizes political subdivisions to enact land use regulations which have as their purpose and effect compliance with the requirements of the National Flood Insurance Program, but that such regulations have no application outside of federally designated flood hazard areas. See Attorney General Opinions MW-171 (1980); H-978 (1977). Nevertheless, article 1581e-1 grants additional flood damage control powers to counties bordering the Gulf of Mexico or its tidewater limits. These powers are not restricted to or conditioned on the actions of any federal

agency in designating an area as a flood hazard.  See Attorney General Opinions MW-171 (1980); H-1024 (1977).  As we indicated in Attorney General Opinion JM-123 (1983), article 1581e-1 must be construed in conformity with its purpose of enabling certain counties to qualify for participation in the National Flood Insurance Program.  Consequently, Attorney General Opinion JM-123 concluded that a particular county lacked powers broad enough to deny utility service to individuals and entities which were not in compliance with county flood regulations.  Nevertheless, federal regulations encourage comprehensive flood management by local communities and expressly allow more stringent regulations than are federally required.  See 44 C.F.R. §§60.1, 60.3(b).  Thus, Gulf Coast counties are not limited in their article 1581e-1 flood regulation powers to areas which have been designated as flood hazard areas by the federal government.  They are, however, limited to enacting only land use regulations and only in flood-prone areas.  See Attorney General Opinion H-1024 (1977).

If the county decides, however, that it is feasible to enact and enforce flood regulations only in the areas which have been federally designated as flood hazard areas, such action would not result in a denial of equal protection as a matter of law.  It is well established that governmental entities may implement their programs a step at a time.  See City of New Orleans v. Dukes, 427 U.S. 297 (1976); Katzenbach v. Morgan, 384 U.S. 641 (1966); see also Beckendorff v. Harris-Galveston Coastal Subsidence District, 558 S.W.2d 75, 81 (Tex. Civ. App. - Houston [14th Dist.] 1977), aff'd 563 S.W.2d 239 (Tex. 1978).  So long as the Gulf Coast county has a rational reason for not enacting and enforcing flood regulations in all flood hazard areas at one time, no equal protection claim exists as a matter of law.  The validity of the actual application of this language to a particular piece of property depends upon the facts involved in each case.[1]

1.  This is not to say that, in a particular case, a landowner could not show that a county's flood plain boundary drawing is discriminatory as applied.  See generally, Viso v. State, 92 Cal. App. 3d 15, 154 Cal. Rptr. 580 (1979).  Nor do we address the question of whether a particular landowner may have other claims against the enforcement of a flood plain regulation.  See Hernandez v. City of Lafayette, 649 F.2d 336 (5th Cir. 1981), (collateral estoppel) cert. denied, 102 S.Ct. 1251 (1982); Town of Largo v. Imperial Homes Corporation, 309 So.2d 571 (Fla. 1975) (equitable estoppel).

## S U M M A R Y

Language in local land-use regulations which tracks the criteria of the National Flood Insurance Program set forth in 44 C.F.R. section 60.3(d)(3), does not on its face effect a "taking" in violation of the Fifth and Fourteenth Amendments of the United States Constitution. The county may adopt flood hazard regulations one step at a time, such that they apply only in federally designated flood hazard areas, without constituting a violation of the Equal Protection Clause of the Fourteenth Amendment as a matter of law. The validity of the actual application of this language to a particular piece of property depends upon the facts involved in each case.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk