**(91 South. 676)**

**No. 23103.**

## HUIE HODGE LUMBER CO. v. RAILROAD LANDS CO., Limited.

(Feb. 27, 1922. Rehearing Denied April 24, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals &⟶55(5)—Reservation of specified minerals held not to reserve oil and gas.**

A reservation in a deed of the exclusive right to the iron ore, coal, fire clay, kaolin, and marl did not reserve oil and gas.

2. **Mines and minerals &⟶55(5)—In construing a reservation intention must be ascertained and surrounding circumstances considered.**

In determining whether a reservation in a deed of the right to the iron, coal, and other minerals covered oil and gas, it must be construed according to the intention of the parties, in doing which the surrounding circumstances and conditions must be considered together with the terms and language used.

3. **Mines and minerals &⟶55(5)—Reservation of iron, coal, and "other minerals" held not to include gas and oil.**

A reservation in a deed made in 1888 of the right to the iron, coal, and other minerals, together with all necessary privileges for mining and a right of way for rail and tramways, etc., did not reserve oil and gas, both because the phraseology indicates that only solid minerals were in contemplation, and because the rule of ejusdem generis requires the words "other minerals" to be construed as including only other minerals similar to coal and iron.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Other.]

4. **Mines and minerals &⟶55(7)—Reservation held only reservation of right to take minerals, and prescribed by nonuser for 10 years.**

A deed reserving the right to the iron, coal, and other minerals with all necessary privileges for mining, etc., and obligating the vendee not to hold the rights conferred adversely, did not reserve the minerals in place, but only the right to take them, which was a real right or servitude prescriptible by nonuser for 10 years under Civ. Code, arts. 3549, 3528–3530, 3544, and 3545.

Provosty, C. J., and Land and Baker, JJ., dissenting.

Appeal from Third Judicial District Court, Parish of Bienville; J. E. Reynolds, Judge.

Action by the Huie Hodge Lumber Company against the Railroad Lands Company, Limited. From a judgment for plaintiff, defendant appeals. Judgment amended.

Stubbs, Theus, Grisham & Thompson, of Monroe, and Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Barksdale & Barksdale, of Ruston, for appellee.

Gilmer & Cousin, of Shreveport, amicus curiæ.

By the WHOLE COURT.

DAWKINS, J. This is a suit to have certain reservations of mineral rights contained in deeds to lands made by defendant's ancestor in title to plaintiff's vendors decreed to have been forfeited for nonuser for more than 10 years. The facts are

not disputed, and the question is one of law.

There were two deeds, and the reservation in the first reads as follows:

"And it is distinctly agreed as part and parcel of the terms of sale of the lands above described that the Vicksburg, Shreveport & Pacific Railroad Company reserves to itself, either for its own benefit or for sale to others, the exclusive right to the iron ore, coal, fire clay, kaolin, and marl contained in or upon said lands, with all necessary privileges of mining on said lands, and also the rights of way for rail and tramways for mining purposes through any portion of said lands herein conveyed; and it is further understood and agreed that the grantee or grantees will not hold adversely or permit any other person to hold adversely to the grantor in this conveyance, or its assigns or successors any iron ore, coal, fire clay, kaolin, and marl, or right of way or other thing reserved to the grantor in this conveyance, but will hold everything herein reserved to the grantor for the grantor, its assigns and successors, and for no other person or purposes whatever."

The reservation in the second deed, dated May 19, 1888, was identical with that of the first above quoted, except that the thing reserved was "the exclusive right to the iron, coal, and other minerals."

The lower court held that these reservations did not include oil and gas, and gave judgment for plaintiff declaring them "to be inoperative and of no effect as to any oil and gas in or under the said land."

Defendant appealed, and plaintiff has answered, praying that the judgment be amended so as to decree the rights to the other minerals prescribed by nonuser for 10 years.

## Opinion.

It is admitted that no effort has been made to explore for minerals of any kind since the reservations were made in 1888, more than 30 years ago.

## As to Oil and Gas.

[1] We take it that it cannot be seriously contended that a reservation which mentions only and specifically "the exclusive right to the iron ore, coal, fire clay, kaolin, and marl contained in and upon said lands" includes oil and gas; for this would be to write into the deed something which the parties did not see fit to include.

[2] As to the reservation in the second deed, by which was reserved "the exclusive right to the iron, coal, and other minerals," it is our duty to ascertain and construe the provision according to the intention of the parties. In order to do this, we should consider the conditions and circumstances surrounding the parties at the time, together with the terms and language used with respect to the things reserved.

[3] At that time, 1888, petroleum and gas were unknown in this state, especially in the section where these lands are situated, and the phraseology used to express the privilege of taking the minerals reserved indicates rather clearly that only solids, such as coal and iron, were in contemplation. Those incidental rights are referred to as "all necessary privileges for mining on said lands, and also the right of way for rail and tramways for mining purposes through any portion of said land herein conveyed," etc. Nothing is said about boring, drilling, or the laying or running of pipe lines, etc., or other incidents of or connected with the exploring for oil and gas. Besides, the rule ejusdem generis requires that the words "other minerals" following the specific terms coal and iron be construed as intending or including other minerals of a character similar to coal and iron, such as solids or minerals in place, requiring mining, for their removal instead of drilling, etc. See 2 Words and Phrases, Second Series, p. 225, verbo "Ejusdem Generis," and authorities therein cited.

In the case of Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266, the Supreme Court of Ohio had before it this same question, as to whether a deed which conveyed "all the coal of every variety, and all the iron ore, fire clay, and other valuable

minerals * * * under the following described premises," included oil and gas, and in passing upon the matter said, in part, as follows:

"The conveyance in question is what is usually known as a mining right, and grants and conveys all the coal of every variety, and all the iron ore, fire clay, and other valuable minerals in, on, or under said lands. Do the words 'other valuable minerals' include petroleum oil? The deed of the mining right was made in February, 1890, and it must be construed in the light of the oil developments as they then existed in the vicinity of the lands. Francis G. Deaver, the grantor in the mining right, resided in Wisconsin, and there is nothing to show that he had any knowledge of the existence of oil in or near these lands. Oil was then produced in small quantities within from 10 to 20 miles of the lands, but there is nothing to show that the parties to the conveyance had any knowledge thereof. Said mining right grants in perpetuity the right 'of mining and removing such coal, ore, or other minerals, * * * with the right to the use of so much of the surface of the land as may be necessary for pits, shafts, platforms, drains, railroads, switches, side tracks, etc., to facilitate the mining and removal of such coal, ore, or other minerals, and no more.' The incidents here granted are all such as are peculiarly applicable to the mining of minerals in place, and not to such as are in their nature of a migratory character, such as oil and gas. Nothing is said about derricks, pipe lines, tanks, the use of water for drilling, or the removal of machinery used in drilling or operating oil or gas wells.

"A rule of construction in such cases, which seems correct, is found in the following from the Law of Mines and Mining in the United States, by Barringer & Adams (page 131): 'In determining what is included in a lease, the familiar rules of construction are applied. The grant is construed most strongly against the grantor. The whole contract must be considered in arriving at the meaning of any of its parts. Terms are to be understood in their plain, ordinary, and popular sense, unless they have acquired a particular technical sense by the known usage of the trade. They are to be construed with reference to their commercial and their scientific import. This rule is of special importance when the question arises whether a specific mineral is included in a general designation.' The words, 'other minerals,' or 'other valuable minerals,' taken in their broadest sense, would include petroleum oil; but the question here is: Did the parties intend to include such oil in the mining right? Taking all the terms of the conveyance in the light of the surrounding circumstances, and in view of the above rule of construction, and upon authority of the case of Dunham v. Kirkpatrick, 101 Pa. 36, 47 Am. Rep. 696, we conclude that the title to the oil did not pass under said conveyance, but remained in the owner of the soil, and upon his death passed to his heirs. * * * *"

See, also McKinney v. Central Ky. Nat. Gas Co., 134 Ky. 243, 120 S. W. 314, 20 Ann. Cas. 934.

Our conclusion is that it was not intended, and that the reservation in this case did not include oil and gas.

### As to Minerals in Place.

[4] The reservations in these deeds were not of the minerals in place, such as iron, coal, etc., but to the vendor, "either for its own benefit or for the sale to others the exclusive right to the iron, coal, and other minerals contained in or upon said lands with all necessary privileges for mining on said lands, with rights of way," etc.; and the subsequent provisions obligating the vendee not to hold the rights conveyed adversely to the vendor or his assigns indicate rather clearly that the purpose was to convey a right to take or mine the minerals, and not the minerals themselves. In these circumstances it is not necessary to pass upon the question of whether or not such minerals may be conveyed separately from the land, or the effects of prescription where the terms of the deed clearly indicate the intention to so convey. The parties in the present case chose words to express their intention which did not purport to transfer anything more than the right to take the minerals, which is a real right or servitude prescriptible by nonuser for 10 years. R. C. arts. 3549, 3528–3530, 3544, 3545.

Therefore for the period of 10 years following the reservations the defendant or its vendors might have exercised the rights re-

tained thereby, or, if the owner of the land had refused, could have maintained during that time a cause of action to enforce them and enjoined the interference therewith. But, when they allowed 10 years to elapse without either, both the right and the action to enforce were lost.

It is not necessary to deal with the phases of mineral rights involved in the case of Frost-Johnson Lumber Co. v. Salling (La.) 91 South. 207,[1] for, as heretofore stated, only a right in express terms was reserved, and no effort was made to convey or reserve the minerals themselves, as in that case.

For the reasons assigned, the judgment appealed from is amended by decreeing that the reservations in the two deeds covering the property described in said judgment did not include oil and gas, and, further, that all other rights to minerals therein reserved have lapsed and prescribed; appellant to pay all costs.

PROVOSTY, C. J., and LAND and BAKER, JJ., dissent.

Rehearing refused by the WHOLE COURT.