UNITED STATES of America

v.

145.30 ACRES OF LAND, MORE OR LESS, situate IN OUACHITA PARISH, STATE OF LOUISIANA, and Jesse W. Wilson, et al., and Unknown Owners.

Civ. A. No. 15895.

United States District Court,
W. D. Louisiana,
Monroe Division.

Dec. 9, 1974.

See also, D.C., 376 F.Supp. 1221.

Donald E. Walter, U. S. Atty., and Levin H. Harris, Asst. U. S. Atty., Shreveport, La., for the Government.

Thomas M. Hayes, Jr., Hayes, Harkey, Smith & Cascio, Monroe, La., for defendants Dan A. Breard and others.

James D. Sparks, Jr., Monroe, La., for Bentz & Elmore, Inc.

## OPINION

DAWKINS, Senior Judge.

The matter now before us is but one aspect of a rather lengthy condemnation proceeding wherein we have been called upon to determine the just compensation due for the United States' taking of certain private property for public use. On May 21, 1974, we disposed of a number of the claims involved by awarding various property owners $3,000 per acre for the taking of their property. 376 F.Supp. 1221 (W.D.La., 1974). Included in this award were tracts 819 and 819A owned by the Breard family (Breard).

When this condemnation proceeding was filed, there existed a "Sand Purchase Contract" between Breard and intervenor, Bentz & Elmore, Inc., (B & E), whereby the latter was granted the right to remove all sand on the two tracts mentioned during a two, and possibly three year period, for a stated consideration. But, due to the Government's taking, B & E was ordered to cease its sand removal operations upon the tracts. At that time, B & E had slightly more than one year of its contract remaining during which it could remove sand from the Breard tracts. Thus, it contends it held a property interest taken by the United States and, accordingly, is owed just compensation.

Both the Government and Breard contend that B & E is not entitled to any compensation. Alternatively, Breard argues that, if B & E is owed compensation, the Government owes an additional sum. The Government's alternative argument is that B & E must share in the amount already awarded to Breard. Finally, Breard argues that, if apportionment legally is required, then B & E has failed to prove what, if any compensation it should be paid.

As we view the matter, it is necessary for us to resolve only two basic issues: (1) Did B & E, as "Vendee" under a "Sand Purchase Contract" with Breard, have a property interest compensable under the Fifth Amendment to the United States Constitution? (2) What, if any, compensation has B & E proved is owed to it as the result of the Government's taking?

## DID BENTZ & ELMORE HAVE A COMPENSABLE INTEREST?

What law determines whether a person has a property interest com-

pensable under the Fifth Amendment? While it is clear that Rule 71A, F.R.Civ. P., generally governs procedural aspects of federal condemnation proceedings, Wright & Miller, Federal Practice and Procedure, Civil, § 3041, and that a State neither may enlarge or diminish exercise of the power of eminent domain by the United States, Kohl v. United States, 1875, 91 U.S. 367, 23 L.Ed. 449, still there is a question as to whether State or Federal law determines the nature of property for which compensation must be paid when taken by the United States. Our research convinces us that the better view—that of the vast majority of courts—is that State law governs " . . . in defining the existence of a property interest for which compensation must be made." Wright & Miller, *supra*, § 3042, p. 94; And See Generally, 1 ALR Fed. 479, "Condemnation—Property—State Law," and cases discussed therein. We turn, therefore, to examining the contract in question, and Louisiana law, in order to ascertain the nature of the property interest conveyed to B & E, and taken by the Government.

In the "Sand Purchase Contract," Breard purported to sell "all of the sand located in, on and under" tracts 819 and 819A to B & E for $10,000, or 25¢ per cubic yard of sand *removed,* whichever figure was greater. Payment was to be made each month when sand was removed; however, at the end of the first year (August 20, 1970), a minimum of $5,000 had to be paid. An additional $5,000 was due August 20, 1971, unless at least $10,000 already had been paid to Breard. At the end of two years, title to the sand conveyed to B & E, but not removed from the property, was to "revert" to Breard. (If high water, or some other "act of God," prevented removal of at least 40,000 cubic yards of sand, an additional period of one year was to be allowed to extract that quantity of sand.)

■ Correct assessment of the nature of this agreement and the property interest conveyed is not made without some difficulty. Nevertheless, we may begin by observing that, under Louisiana law, the owner of land may not convey to another the "minerals" in, on or under his land in full ownership, thereby creating subsurface planes of ownership different from ownership of the surface itself. Huie Hodge Lumber Co. v. Railroad Lands Co., 151 La. 197, 91 So. 676 (1922); Iberville Land Co. v. Texas Co., 14 La.App. 221, 128 So. 304 (La.App. 1st Cir., 1930). Moreover, Louisiana's new *Mineral Code,* adopted by the Louisiana Legislature, codifying what it perceived to be the State's jurisprudence, expressly provides that " . . . solid minerals [1] are insusceptible of ownership apart from the land until reduced to possession." La.R.S. 31, § 5 (effective January 1, 1975). Thus Breard did not convey full ownership of the sand *in place* to B & E.

■ The essence of the agreement between Breard and B & E was a grant of an exclusive right to remove sand during a specified period for a stated consideration. We conclude that, under Louisiana law, the agreement created a mineral right in favor of B & E. A mineral right is a real right, *i. e.,* the right which a person has in a thing, such as land; it is not a mere personal contract. La.R.S. 31, § 16 (effective January 1, 1975); 1 Yiannopoulos, Civil Law of Property, Ch. 6 (1966). Consequently, when the United States exercised its power of eminent domain here, and ordered B & E to halt sand removal operations on property taken, it did not frustrate merely a personal contract between two parties; it deprived B & E of a real right, an interest in property. Hence, if B & E had adequately proven the value of the real right taken, it would be entitled to compensation.

---

1. Section 4 of the *Mineral Code* and the comments thereto make it clear that this rule applies to rights to remove substances such as sand.

## HAS BENTZ & ELMORE MET ITS BURDEN OF PROOF?

■ The burden of establishing the value of the property interest taken rests upon the owner of such interest. U. S. ex rel. TVA v. Powelson, 1942, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; U. S. v. Certain Parcels of Land, 149 F.2d 81 (5th Cir., 1945).

At the time of taking, B & E had at least one year and eight days remaining under its contract during which it could exercise its right to remove sand from the Breard tracts. But at that same time it owed Breard an additional $8,-192.50, i. e., the balance of the first year's minimum $5,000 payment plus the full second year's minimum considera-tion. As a result of the taking, B & E was relieved of its obligation of making the second year's payment.[2] Thus when B & E was deprived of its mineral right, it no longer had to pay for that right.

■ Although B & E may have suf-fered a net loss as a result of the Gov-ernment taking, we find that it utterly has failed to sustain its burden of prov-ing any definitive value of its property interest thus taken. In its brief, B & E asks for $3,000 per acre, the amount we awarded the landowner, Breard. Coun-sel for B & E fails to call our attention to any portion of the record which would aid us in determining the value of its property; and our own examination of the transcript of trial reveals the follow-ing:

1. There is *no* proof of the market value of this mineral right over and above the $5,000 which B & E would have had to pay had the Gov-ernment not taken this property. (For all *we* know, B & E may have been re-lieved of a bad bargain by the Govern-ment's action.)

2. Testimony of Robert Bentz showed only the amount of sand his com-pany *could* have removed from the Breard tract; no proof was offered of any plans definitely to remove *any* sand. In the absence of firm proof we cannot speculate as to what B & E would have done. The fact that it in-curred additional "hauling costs" for each "load" of sand removed from other tracts does not prove anything, since we do not know how many addi-tional "loads" B & E will have to re-move from *other* tracts due to the Government's taking.

Since it had the opportunity, but failed to prove the value of its property inter-est so taken, we find that B & E is en-titled to receive no compensation.

It follows necessarily that we are not required to decide by whom compensa-tion would have had to be paid to B & E had it proved the value of its property interest.

A decree in accordance with this ruling, after approval as to form by coun-sel for B & E, should be presented for our signature by Breard's counsel.

2. Pursuant to an unappealed and final State District Court judgment, B & E was required to pay the $5,000 owed for the first year even though it was stopped short by eight days of having a full year's use of its mineral right. In an unreported opinion, the Court held that "Bentz & Elmore's *own deliberate choice* and *not* the intervention of *the federal govern-ment* . . . prevented it from protect-ing itself against the minimum payment re-quired by the contract." (Emphasis added.) During the first 357 days of the existence of its mineral right, B & E had removed only 7,230 cubic yards of sand, paying $1,087.50. Hence, the State Court required it to pay Breard an additional $3,192.50.