Emmett ADOLPH, Sr., et al.,
Plaintiffs–Appellants,

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY OF THE UNITED STATES, Defendant–Appellee.

No. 87–3196.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1988.

Brian J. Waid, Bubrig, Scandurro & Waid, Buras, La., for plaintiffs-appellants.

Drake Cutini, John Volz, U.S. Atty., Renee Clark McGinty, Asst. U.S. Atty., New Orleans, La., Arthur R. Goldberg, Atty., Dept. of Justice, Civ. Div., Robert S. Greenspan, John Scheibel, Atty., Assoc. Gen. Counsel, FEMA, Washington, D.C., for defendant-appellee.

Before THORNBERRY, WILLIAMS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Louisiana property owners affected by flood-plain ordinances passed by the Plaquemines Parish Commission Council filed this class action alleging an unconstitutional taking. They challenge the imposition, without compensation, of severe flood control regulations which are said "effectively [to] sound a death-knell for these communities, the ancestry of which predates our Constitution." Because the parish was required by Federal Emergency Management Agency (FEMA) regulations to adopt such a stringent building code in order to participate in the National Flood Insurance Program (NFIP), 42 U.S.C. § 4001 *et seq.*, the plaintiffs named FEMA as a defendant, as well as the parish council, which body had imposed the challenged building ordinances—conforming to federal standards—upon the affected residents. The trial court dismissed the suit against FEMA under Fed.R.Civ.P. 12(b)(6). While the substantive issues presented herein are *res nova* before this court, our opinion today is guided by a compelling decision from the United States District Court for the District of Columbia, dismissing identical allegations against local building ordinances passed in conformance with FEMA guidelines. We AFFIRM.

## I. *The NFIP Scheme.*

In order to participate in the NFIP,[1] the Plaquemines Parish Commission Council passed building ordinances in conformance with FEMA regulations that required that new or additional structures meet certain elevation requirements.[2] 42 U.S.C. §§ 4022, 4102. The plaintiffs brought this suit against FEMA and the parish council alleging that the building ordinances made development of their (and some 7,649 class members') property prohibitively expensive, rendering their property unmarketable, and resulting in an unconstitutional taking in violation of the fifth and fourteenth amendments. FEMA was named as a defendant because certain federal benefits would not be available in the parish if the parish had not adopted an ordinance (such as the one adopted), that meets certain requirements (set by FEMA and calculated with hundred-year flood plain estimates taken by FEMA) designed to minimize future flood losses in the parish. As stated in the complaint, the plaintiffs view any injunctive relief against the parish as meaningless unless FEMA is also enjoined from "punishing" the parish for noncompliance with the allegedly unconstitutional regulations.

The district court dismissed the complaint for failure to state a claim. This disposition was based on holdings (1) that the ordinances were passed by the parish (which was named as a party and against which this litigation is currently stayed pending action here), rather than FEMA, and thus there was no Article III case or controversy; and (2) that the FEMA regulations did not result in an unconstitutional taking.

On this appeal the plaintiffs contend that the parish ordinances were passed pursuant to FEMA regulations and thus there is an actual controversy between plaintiffs and FEMA. The plaintiffs also contend that whether an unconstitutional taking has occurred depends upon the reasonableness of the government regulation and that reasonableness should be determined on the facts as a whole on a case-by-case basis, rather than on a motion to dismiss.

1. The NFIP is actually composed of four public laws that have been codified at 42 U.S.C. §§ 4001–4128. These are the National Flood Insurance Act of 1968, Title XIII, Public Law 90–488 (1968) (1968 Act); Title IV of the Housing Act of 1969, Public Law 91–152 (1969) (1969 Act); the Flood Disaster Protection Act of 1973, Public Law 93–234 (1973) (1973 Act); and Title VII, Public Law 95–128 (1977 Act).

2. Under the NFIP, the federal goal is providing subsidized flood insurance for *existing* structures in flood-prone areas, while simultaneously discouraging *future* unsafe construction in such areas. 42 U.S.C. §§ 4011–12. *See* S.Rep. No. 583, 93d Cong., 1st Sess. at 2–3 (1973), *reprinted in* 1973 U.S.Code Cong. & Ad.News 3217. Minimizing future flooding hazards through sound flood-plain management is thus achieved through the enactment and enforcement of local ordinances. The policy has three basic purposes: (1) protection of individuals from danger, who would otherwise develop or occupy the flood-prone land; (2) protection of other landowners from damage resulting from flood-zone development and consequent obstruction of the flood flow; and (3) protection of the public from individual land-use decisions that later require public remedial expenditures for public works and disaster relief. The program provides that federally-subsidized insurance and other federal benefits are available with respect to existing structures, even if they were constructed below the appropriate flood elevations. It is only new structures, or substantial improvements (as defined in 44 C.F.R. § 59.1) of existing structures, except those that would not "result in *any increase* in flood levels within the community during the occurrence of the base flood discharge" (44 C.F.R. § 60.3(d)(3) (emphasis added)), that are required to be at the base flood elevations. 44 C.F.R. §§ 60.3(c)(1), (2), (e). Failure to enact and enforce these minimum measures requires that such non-complying communities be "suspended" from the NFIP. 42 U.S.C. §§ 4012(c), 4022, 4102, 4106(a). *See Responsible Citizens v. City of Asheville,* 308 N.C. 255, 302 S.E.2d 204, 210, n. 4 (1983) (ordinance almost identical to that at issue here). Thus, plaintiffs' repeated suggestion that they will be required to abandon their existing residences and businesses is clearly fallacious. As further discussed *infra* n. 11, diminution in property value, standing alone, is insufficient to establish a taking; instead "the 'takings' issue in these contexts is resolved by focusing on uses the regulations permit." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978). Because even non-conforming present uses and ample future improvements above base flood elevations are allowed upon the regulated lands, the parish's NFIP-inspired building restrictions are self-evidently not a taking of all economically beneficial use, as the plaintiffs so adamantly contend.

The plaintiffs' takings argument is legally unsupportable, however, though this court has not previously addressed the precise issue of flood control measures that effectively eliminate commercial value. The only court to address the FEMA regulatory guidelines for local ordinances held that the federal flood prevention regulations do not result in an unconstitutional taking. *Texas Landowners Rights Ass'n v. Harris*, 453 F.Supp. 1025 (D.D.C.1978) (decided on summary judgment), *aff'd mem.*, 598 F.2d 311 (D.C.Cir.), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). Neither the distinction that that case was decided not on the complaint alone, but with consideration of stipulated facts, nor very recent Supreme Court decisions on regulatory takings, undermine the persuasiveness of this well-reasoned authority adverse to the plaintiffs' arguments.

## II. *Disposition as a Matter of Law Was Proper.*

### A. *Case or Controversy?*

 FEMA mistakenly argues that there is no case or controversy between plaintiffs and the agency in this suit. To meet the case-or-controversy requirement of article III of the Constitution, (1) a plaintiff must state an actual or threatened injury to himself; (2) the injury must be a result of the allegedly illegal conduct of the defendant; and (3) the injury must be capable of redress by a favorable decision with respect to the challenged conduct. *Common Cause v. Dep't of Energy*, 702 F.2d 245, 250 (D.C.Cir.1983). The plaintiffs' allegations of an unconstitutional condition and of federal coercion meet this jurisdictional threshold. *Bowen v. Gilliard*, — U.S. ——, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987) (private citizen challenging the effect of federal guidelines and regulations under Aid to Families with Dependent Children (AFDC) program operated by the state).

Although the *Texas Landowners* court did not address the case-or-controversy issue, its conclusions are relevant to this issue, and its clear implication was that those plaintiffs had alleged a case or controversy with FEMA. If either the *Texas Landowners* court or the court below had ruled that there was no case or controversy with FEMA, dismissal would have had to have been under rule 12(b)(1), rather than under rule 12(b)(6); neither court properly could have reached the merits of any of the various claims against FEMA if there was a lack of article III jurisdiction.

### B. *Failure to State a Claim?*

Taking the allegations of the complaint as true, however, a court may properly dismiss a suit for failure to state a claim upon which relief may be granted. Because, as a matter of law, FEMA neither affected nor required any unconstitutional taking of the plaintiffs' property, such a disposition is appropriate here.

A claim is not to be dismissed under rule 12(b)(6) unless it appears to a certainty that no relief can be granted under any set of facts provable in support of its allegations or if the allegations, accepted as true, do not present a claim upon which relief legally can be obtained. *United States v. Uvalde Consolidated Indep. School Dist.*, 625 F.2d 547, 549 (5th Cir.1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957)). *Texas Landowners* establishes that as a matter of law, the NFIP is not a regulatory taking. Because no facts are needed for evaluation of the claim, it is clear that a procedural disposition of claims against FEMA was correct.

### C. *There Was No Unconstitutional Condition.*

 By conditioning the availability of federally-subsidized insurance upon enactment of local flood-plain management ordinances in accordance with federal standards, the NFIP represents a voluntary federal program. *Texas Landowners*, 453 F.Supp. at 1030. As in the cases upholding imposition of speed-limit reductions, minority set-asides, and drinking-age requirements as a condition of federal highway funding, Congress traditionally has been sustained in enacting such programs to en-

courage state and local participation in the achievement of federal legislative goals. *See South Dakota v. Dole,* —— U.S. ——, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) ("Incident to this power [to Tax and Spend], Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'") (citing *Fullilove v. Klutznick,* 448 U.S. 448, 474, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902 (1980) (10% set-aside for contracts with minority business enterprises); *Lau v. Nichols,* 414 U.S. 563, 569, 94 S.Ct. 786, 789, 39 L.Ed.2d 1 (1974) (nondiscrimination provisions applied to local schools).[3]

Because communities such as Plaquemines Parish "weigh the advantages of these federal benefits against the limitations on future development in the communities, which must be done in a safe manner, so that there will be no damage from flooding in the future," the district court here correctly saw this case as indistinguishable from *Texas Landowners.* We concur with the holding below that the parish was not compelled to participate in the NFIP and that as a result FEMA could not be charged with an unconstitutional taking of property, even if, *arguendo,* the elevation requirements otherwise could be shown to constitute an actual deprivation without compensation.

### III. *That All Takings Claims Must Be Factually Explored Is Legally Erroneous.*

The plaintiffs argue that *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* —— U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), symbolizes both the fact-specific nature of takings determinations and that dismissal

without at least some evidentiary development, either administratively or at trial, is improper. Relying in part upon *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979), and *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962), the plaintiffs argue that the Supreme Court has not developed any "set formula" for determining when a regulatory taking occurs; they contend that

> [t]o conclude otherwise would be to effectively hold [sic] that regardless of how onerous, flood control ordinances can *never* result in an unconstitutional taking—a position expressly contrary to the holding of the Supreme Court in *First English.*

Contrary to plaintiffs' suggestion, however, *First English* did not hold that there must be a trial on every claim of a taking. The holding of the court addressed only the narrow, technical issue of whether there could be, as a matter of law, compensation paid for "temporary" takings of property, *i.e.,* before a court ultimately holds a statute or regulation unconstitutional. The court specifically stated that it was not reaching the merits of the controversy. 107 S.Ct. at 2384–85. The dissent noted that if the merits had been reached, the "regulatory program at issue here cannot constitute a taking." 107 S.Ct. at 2391–92 (Stevens, J., dissenting).

Here the law is well settled, and no proffered evidence will alter the result indicated by *Texas Landowners.* Because the NFIP is not a taking as a matter of law, the specific facts of this case, or of *Texas Landowners,* are irrelevant. However, even a cursory examination of the allegedly crippling burden imposed upon the residents of Plaquemines Parish reveals that the new building ordinances do not deprive property owners of all beneficial use of their flood-prone lands.

---

**3.** The district court in *Texas Landowners* admirably anticipated these later-reiterated principles. "The federal government traditionally obtains state cooperation and participaton in federal regulatory program[s] by offering the states a sufficiently attractive incentive or by threatening to withdraw a federal benefit they are pres-

ently receiving." 453 F.Supp. at 1031 (quoting *District of Columbia v. Train,* 521 F.2d 971, 993 n. 26 (D.C.Cir.1975), and *Steward Machine Co. v. Davis,* 301 U.S. 548, 589–90, 57 S.Ct. 883, 891–92, 81 L.Ed. 1279 (1937) (to comply with a condition attached to a federal benefit is not to be equated with federal coercion)).

### IV. As a Matter of Law There Was No Taking.

 Assuming, *arguendo*, that suit could be brought against FEMA for an action taken by the parish, the land-use and building criteria of the NFIP do not constitute a taking of property without compensation. While, as a general rule, federal courts look to state law to determine whether a property interest has been taken,[4] thereby triggering the constitutional requirement of "just compensation," we adopt *Texas Landowners'* conclusion that the NFIP, when operating precisely as intended by Congress, results in no unconstitutional taking of plaintiffs' property, regardless of state law. *Texas Landowners*, 453 F.Supp. at 1032–33.

Plaintiffs sole attempt to distinguish *Texas Landowners* is to emphasize that it was decided upon summary judgment, not a motion to dismiss. However, this is a meaningless distinction, because, as the district court noted below, both it and the *Texas Landowners* district court were ruling that as a matter of law the NFIP did not constitute a taking. The facts relevant to *Texas Landowners'* holding and to the instant case are the same; the cases are not distinguishable, and no factual development was necessary.[5]

Plaintiffs' only real argument attempting to undermine *Texas Landowners* is that an arguably more "conservative" Supreme Court may now apply a more searching scrutiny to allegations of such regulatory takings as are made here. It is true that the Supreme Court decided both *First Eng-*

*lish* and *Nollan v. California Coastal Comm'n*, — U.S. —, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), after the dismissal below. However, neither case contains even dicta indicating that the persuasiveness of *Texas Landowners'* validation of the NFIP can be questioned.

As FEMA correctly underscores, it is important to recognize that the plaintiffs are challenging not only the building elevation requirements, but the sanctions which Congress has prescribed. In other words, the plaintiffs challenge the entire Congressional scheme, and to hold in favor of them would require a holding that virtually the entire statute is unconstitutional. Obviously, such a holding would turn this carefully-crafted nationwide scheme on its head.

However, the contention that these recent cases significantly altered judicial review of alleged takings is without merit. The court did note in *Nollan* that a land use regulation may effect a taking if it does not substantially advance legitimate state interest, or if it denies the owner economically viable use of the land. *Id.* 107 S.Ct. at 3147 (citing *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), and *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed. 2d 631 (1978)). But it is apparent that *Nollan* did not revolutionize takings law.[6] Additionally, we find unpersuasive and implausible the plaintiffs' *in terrorem* characterization of the consequences had the

---

4. *United States v. Causby*, 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946); *United States v. 131.68 Acres of Land*, 695 F.2d 872, 875 (5th Cir.1983); *United States v. 145.30 Acres of Land*, 385 F.Supp. 699, 700–01 (W.D.La.1974).

5. Significantly, the principal means which the plaintiffs use to attempt to distinguish virtually all of the cases FEMA relied upon below is to state that they were not decided on motions to dismiss. Plaintiffs attempt no demonstration whatsoever that the NFIP violates the Constitution in some way not considered in *Texas Landowners*.

6. *See* R. Epstein, *Takings: Private Property and the Power of Eminent Domain* (1987); C. Massey, Book Rev., 63 Ind. L.J. 113–29 (Wnt'r 1988) (reviewing R. Epstein, *id.*); Note, The Supreme

Court Fashions a New Taking Remedy: *First English Evangelical Lutheran Church v. County of Los Angeles*, — U.S. —, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), 24 Willamette L.Rev. 101–27 (Wnt'r 1988); D. Callies, Property Rights and the Fifth Amendment: Regulatory Takings and the Right to Compensation, 11 *Urban, State & Local Law Newsletter* 2(5) (Fall 1987); H. Reinmiller, Fifth Amendment Takings: A More Conservative Stand on Land Use Policies, 21 *Creighton L.Rev.* 213–37 (Fall '87); Note, The Constitutionality of Pole Attachments Legislation: Not a Taking, but a Valid Regulation of Cable Television; *FCC v. Florida Power Corp.*, 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987), 17 Sw. U.L.Rev. 321–49 (Spr.1987).

parish council refused to enact FEMA-mandated building regulations and so declined participation in the NFIP.[7]

*Texas Landowners'* determination that the NFIP does not constitute a taking thus is not impaired by the recent takings cases from the Supreme Court. Furthermore, state flood-management authorities have frequently been sued on allegations that their building restrictions constituted takings, and there is little credence due the plaintiffs' assertion that the almost uniform rejection of those takings claims would be reviewed differently by the Supreme Court now.[8] The plaintiffs' chance of prevailing on the merits here is not increased by having joined the parish as a party-defendant, because even when the local government is sued directly, the same rejection of the takings claim obtains.

For instance, a local ordinance (more restrictive than the NFIP) adopted for purposes of participation in the NFIP was, after careful scrutiny by the Supreme Court of North Carolina, found not to be an unconstitutional taking of property. *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 302 S.E.2d 204 (1983). The Washington Supreme Court in *Maple Leaf Inv., Inc. v. State Dept. of Ecology*, 88 Wash.2d 726, 565 P.2d 1162 (1977), upheld an ordinance that prohibited all residential development—not only that which would increase flood levels. In *Brecciaroli v. Connecticut Comm'r of Env'tl Protection*, 168 Conn. 349, 362 A.2d 948 (1975), an administrative agency denied a permit to fill a 5.3–acre wetlands parcel. The trial court refused to allow the introduction of evidence on the takings issue, and its decision was upheld by the Connecticut Supreme Court.[9]

7. FEMA is absolutely correct that the plaintiffs' hyperbole includes some serious misstatements of the law. For instance, it is simply not the case, as the plaintiffs suggest, that they "cannot improve or renovate existing structures" and "will eventually be forced, by FEMA's mandates to move entirely out of the area settled by their ancestors, to entirely different communities." We need not speculate, as plaintiffs would have us do, as to the burden if the base elevations were even ten times those imposed, because significant new construction is permitted, and existing structures are unaffected. Additionally, 44 C.F.R. § 65 permits communities to submit data to FEMA for evaluation—and possibly alteration—of FEMA's initial determination of base flood elevations. The opinion in *Falls Chase Special Taxing Dist. v. Dir., FEMA*, 580 F.Supp. 967, 970–71 (N.D.Fla.1983), contains an excellent discussion of how the calculations are made under the FEMA criteria and what input external sources enjoy in this administrative process. As also noted by the government, existing buildings are eligible for all federal benefits, and new construction and substantial improvements (as defined in 44 C.F.R. § 59.1) are eligible for some variances from FEMA (under 44 C.F.R. 60.6(b)) and others locally adopted and community-approved (pursuant to 44 C.F.R. 60.6(a)), and certainly are permitted at levels meeting the new elevation requirements. As discussed *supra* n. 2, there is substantial exaggeration in the drastic picture the plaintiffs attempt to paint of what might happen as a result of their community's decision to participate in the NFIP.

They draw an equally drastic, and similarly fallacious, portrait of what might have happened if their community had decided not to participate in the program, and federal funds (FHA, HUD, and VA) and programs (NFIP and

such others as EPA sewage facilities) had thus become unavailable in Plaquemines Parish. Contrary to plaintiffs' assertions, however, if the parish had chosen not to participate in the program, conventional mortgages through federally-regulated institutions, such as FDIC and FSLIC members, would still be available, for example. 42 U.S.C. § 4106(b), *as amended by* Pub.L. No. 128, 95th Cong.2d Sess., 91 Stat. 1111, 1144 (1977). *See Texas Landowners*, 453 F.Supp. at 1028 & n. 7. The prohibition on issuing loans from federally-regulated institutions contained in 42 U.S.C. §§ 4003(a), 4012(b) applies only to property for which flood insurance is available but has not been obtained, and there is absolutely nothing suggesting to the plaintiffs or their counsel that existing mortgages are placed in default because borrowers cannot receive NFIP coverage.

8. In *Deltona Corp. v. United States*, 657 F.2d 1184, 1194, 228 Ct.Cl. 476 (1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982), the court held that there could be no taking as a matter of law. As the most recent flood-management case decided by the federal courts of appeals, we find persuasive its reasoning from earlier zoning cases, which is parallel to what the Supreme Court did in *First English* and *Nollan*. Compare id. at 1191–93 *with Nollan*, 107 S.Ct. at 3147, *and First English*, 107 S.Ct. at 2382 ff.

9. *Accord, Usdin v. Dept. of Env'tl Protection*, 173 N.J.Super. 311, 414 A.2d 280 (Law Div. 1980), *aff'd*, 179 N.J.Super. 113, 430 A.2d 949 (App.Div. 1981); *Cappture Realty Co. v. Bd. of Adjustment*, 126 N.J.Super. 200, 313 A.2d 624 (App.Div.1973), *aff'd*, 133 N.J.Super. 216, 336 A.2d 30 (N.J.1975); *Dur–Bar Realty Co. v. City of Utica*, 57 A.D.2d

Similarly, the Georgia Supreme Court in *Pope v. City of Atlanta*, 242 Ga. 331, 249 S.E.2d 16 (1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1281, 59 L.Ed.2d 494 (1979), held constitutional a city plan that prohibited construction of "impervious structures," including a proposed tennis court, in a flood plain. This case was decided under the state constitution, using an analysis identical to that used under the federal Constitution. Consideration under the federal Constitution was foreclosed, because the federal constitutional issues had already been determined in favor of the validity of the ordinance. *Pope v. City of Atlanta*, 418 F.Supp. 665 (N.D.Ga.1976), *aff'd mem.*, 575 F.2d 298 (5th Cir.1978).

The North Carolina Supreme Court in *Responsible Citizens* determined that the enactment of the ordinance was "reasonably necessary" for the public safety, health and welfare,[10] noting that the floodplain requirements apply only to new construction and substantial improvements and did not result in a taking of such property. So long as the challenged ordinances do not directly affect the then-current use of plaintiffs' property, the prohibitive cost of complying with the regulation provides no proof of a taking.[11]

Even assuming that the cost of complying with the land-use regulations is prohibitive (and we do not decide that it is)

51, 394 N.Y.S. 913 (1977), *aff'd,* 44 N.Y.2d 1002, 408 N.Y.S.2d 502, 380 N.E.2d 328 (N.Y.1978); *Turnpike Realty Co. v. Town of Dedham*, 362 Mass. 221, 284 N.E.2d 891 (1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 689 (1973); *Turner v. County of Del Norte*, 24 Cal. App.3d 311, 315, 101 Cal.Rptr. 93 (1972).

**10.** As did the court in *Texas Landowners*, the North Carolina Supreme Court recognized that the flood management involves the safety of lives and property, not merely environmental or aesthetic considerations. *Compare Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 107 S.Ct. 1232, 1242–46, 94 L.Ed.2d 472 (1987) (emphasizing the importance of health and safety concerns) *with Nollan*, 107 S.Ct. at 3141 (no health and safety concerns). Flood-hazard zoning and other regulations serve a vital purpose in protecting the people who occupy the regulated land and in protecting neighboring landowners from increased flood damage and in protecting the general public. *See Turnpike Realty Co. v. Town of Dedham*, 362 Mass. 221, 284 N.E.2d 891 (1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 689 (1973). Under certain circumstances, in an exercise of the state's police power to protect the public health, safety, and welfare, property may be appropriated by government action even without compensation. *See San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1980).

**11.** That mere loss of best or most-valuable use does not rise to the level of a taking was presented to, but not relied upon, by the district court as an alternative ground for dismissal on the merits. While *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 414, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922), ruled that regulatory use restrictions could have the same effect for constitutional purposes as an appropriation, if intended uses were rendered *"commercially impracticable,"* FEMA correctly contends that loss or diminution of value is but one of the *Kaiser*

*Aetna* factors. 444 U.S. at 175, 100 S.Ct. at 390; *see Drakes Bay Land Co. v. United States*, 424 F.2d 574, 191 Ct.Cl. 389 (1970). So even if Louisiana law views property as "damaged," if governmental action causes a dimunition in value, *Parish of Lafayette v. Hernandez*, 232 La. 1, 93 So.2d 672 (1957), this court should consider, among other things, the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government's action. *Kaiser Aetna*, 444 U.S. at 175, 100 S.Ct. at 390. *See also Robertson v. Parish of Jefferson*, 465 So.2d 787, 791 (La. App. 5th Cir.1985); *Trustees Under Will of Pomeroy v. Town of Westlake*, 357 So.2d 1299, 1303–04 (La.App. 3d Cir.1978); *Columbia Gulf v. Hoyt*, 252 La. 921, 215 So.2d 114, 120 (1968).

FEMA urges a number of takings cases outside of the flood-management field as also supporting its position. *See, e.g., Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (although plaintiff argued that the defendant city "completely destroyed the value of [plaintiff's] property for any purpose or use whatsoever," the court rejected plaintiff's takings claim); *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (though there was shown to be a 87–93% dimunition in property value, there was no taking); *Deltona Corp. v. United States*, 657 F.2d at 1191 ("[T]he decisions of the Supreme Court 'uniformly reject the proposition that diminution in property value, standing alone, can establish a "taking."'" Instead 'the "takings" issue in these contexts [of 75–99% reductions in value] is resolved by focusing on uses the regulations permit.'") (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), and *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926)); *Jentgen v. United States*, 657 F.2d 1210, 1213, 228 Ct.Cl. 527 (1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982) (even drastic dimunition in property value does not result in a taking of property).

and recognizing that the market value of plaintiffs' properties has diminished (a fact found by the trial court), these factors are of no consequence here. *Responsible Citizens,* 302 S.E.2d at 204. The court concluded that no "taking" had occurred, citing *Texas Landowners,* and numerous state cases in which flood-plain ordinances withstood challenges that they were a taking of property without compensation.

The court below correctly relied upon the same discussion in *Texas Landowners* and similarly held that the plaintiffs had failed to state a claim for which it could grant any relief. Dismissal of FEMA under Fed. R.Civ.P. 12(b)(6) was, accordingly, appropriate.

## V. *Conclusion.*

Language in the local land-use regulations that tracks the criteria of the NFIP does not, on its face, effect a taking in violation of the fifth and fourteenth amendments. The parish's building code protects the public health and substantial non-complying, but non-injurious uses are permitted; there are also no indications of arbitrary, discriminatory, or acquisitive governmental conduct. The validity under state law of the actual application of this ordinance to a particular piece of property depends upon the facts involved in each case, but FEMA would not be a proper party, because the parish's enactment in compliance with FEMA standards and in order to participate in the NFIP was neither under federal coercion nor as an unconstitutional condition to federal benefits. The district court's correct decision with respect to FEMA was one of law and required no factual development. For the foregoing reasons, the district court's dismissal of FEMA from plaintiffs' suit was proper, and we AFFIRM.