538 So.2d 322 (1989)
Glen L. WEST, Jr., et al., Plaintiffs-Appellees,
v.
Gary L. GODAIR, et ux., Defendants-Appellants.
No. 87-1277.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
Rehearing Denied March 8, 1989.
Writ Granted May 19, 1989.
*323 Bradley, Wallace & O'Neal, Martha O'Neal, Deridder, for plaintiffs-appellees.
Bean & Parker, Ernest L. Parker, Lafayette, for defendants-appellants.
Before GUIDRY, KNOLL and KING, JJ.
KNOLL, Judge.
The issue in this appeal is whether sand, gravel, topsoil, and pit run are minerals under mineral reservations in three separate cash sales, respectively from Glen L. West, Jr., Steven A. West, and William D. West, II (hereafter the Wests) to Gary Godair and his wife, Pamela Godair, (hereafter the Godairs) which provide:
"Vendor [the Wests] reserves unto himself, his heirs and assigns, an undivided one-half (½) interest in and to all of the minerals of every nature or kind situated in, on and under the hereinabove described property."
On February 2, 1982, the Wests each transferred to the Godairs by separate acts of cash warranty deed certain tracts of land situated in Vernon Parish. Each sale contained the mineral reservation recited hereinabove. Beginning in April of 1983, the Godairs entered into agreements with various parties allowing for the exploration and mining of pit run, field dirt, wash gravel, topsoil, and sand on the property purchased from the Wests. On February 5, 1986, the Wests made written demand on the Godairs for an accounting in connection with all pit run, field dirt, wash gravel, top soil, and sand mined or removed from the property the Godairs acquired. The Godairs denied the Wests' demand for an accounting, contending that the mining of these items did not fall within the scope of the mineral reservations contained in the deeds. This litigation ensued.
The trial court ruled in favor of the Wests, finding: (1) Holloway Gravel Co., Inc. v. McKowen, 200 La. 917, 9 So.2d 228 (1942), and Huie Hodge Lumber Co. v. Railroad Lands Co., 151 La. 197, 91 So. 676 (1922), jurisprudence interpreting the doctrine of ejusdem generis[1], inapplicable to the case sub judice; and, (2) extrinsic evidence as to the intent of the parties concerning the mineral reservation was not helpful, since there was no discussion *324 among the parties regarding this subject. We reverse.
SCOPE OF MINERAL RESERVATION
The Godairs contend that the trial court erred in extending the scope of the mineral reservation to include sand, gravel, pit run, etc., and in failing to give weight to extrinsic evidence that limited the reservation to oil and gas exploration.
In Continental Group, Inc. v. Allison, 404 So.2d 428 (La.1981) (on original hearing), at page 431, the court stated:
"In the more usual mineral servitude grant involving landowner and mineral purchaser, broad language has understandably and properly been restricted by the courts. Consequently there has arisen the principle that the proper interpretation is that which least restricts ownership of the land conveyed (McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960)) and the rule of ejusdem generis." (Footnote omitted.)
In the present case it is clear that the ejusdem generis rule relied upon in Holloway Gravel Co. Inc. and Huie Hodge Lumber Co., and refered to in Continental Group, Inc., is inapplicable, and as such, was properly rejected by the trial court. The wording used in the mineral reservation at issue does not utilize any enumeration which would limit the general term, "minerals of every nature or kind situated in, on and under the hereinabove described property."
However, we find that the principle in Continental Group, Inc. applicable herein is that the proper interpretation of an ambiguous reservation is that which least restricts ownership of the land conveyed.
In Continental Group, Inc. the Louisiana Supreme Court stated, "[T]he phrase `all mineral rights' is inherently ambiguous and the word `minerals' as defined in its broadest sense, would include anything not animal or vegetable and would even embrace the soil itself." Accordingly, the court concluded that where the mineral reservation is ambiguous the court may examine extrinsic evidence to determine the intent of the parties in making this reservation. Id., at page 435.
In the present case, since the mineral reservation employed herein added the words "of every nature or kind situated in, on and under the hereinabove described property", we must first determine whether that additional language suffices to remove the inherent ambiguity found in the term "all mineral rights". It can be argued that this additional language does serve that purpose as minerals "of every nature or kind" would encompass not only fugacious minerals (oil and gas) but solid minerals as well. On the other hand, do the additional terms employed add any real specificity or meaning to the already all inclusive term "all minerals"?
As stated by Justice Dennis in his concurring opinion in Continental Group, Inc. at page 439:
"In interpreting contracts we are guided by Louisiana Civil Code articles 1945-62 comprising the chapter entitled `Of the Interpretation of Agreements.' Article 1959 [now Article 2051] provides:
`However general be the terms in which a contract is couched, it extends only to the things concerning which it appears that the parties intended to contract.'
While the objective of the court should be to determine the actual subjective intent of the parties, nevertheless the very fact that the parties used general or indefinite language is indicative of the fact that the parties probably did not, at the time of their agreement, have a specific understanding as to exactly what their contract was intended to comprehend."
In the case sub judice the evidence preponderates that the vendors and the vendees did not negotiate the very general mineral reservations utilized. The vendors simply told the vendee, who hired the notary/attorney to confect the sale, that they wanted to reserve the minerals. The attorney/notary did as told, utilizing the very broad mineral reservation detailed hereinabove. Applying the rationale outlined above to the present case, we hold that the *325 additional language employed did not make the mineral reservation any less ambiguous.
Turning to the record before us, the evidence most favorable to the trial court's ruling in favor of the inclusion of sand, gravel, topsoil, and pit run in the mineral reservation is found in the Wests' testimony that they did not intend to exclude these from the mineral reservation, and that there was mineral activity within 25 miles of the property in question. We have referred to the Wests' testimony regarding their intentions, and attach little or no significance to it, since it appears after-the-fact and is, at best, self-serving. The factor most supportive of the position taken by the trial court is that gravel and sand were commercially exploitable within 25 miles of the property involved at the time the mineral servitude was established. However, despite this knowledge, the fact remains that there were no negotiations whatsoever between the parties concerning the scope of the reservation. Therefore an element of doubt is present concerning the intent of the parties since the usual and customary reservation of minerals is meant to apply to oil and gas. Furthermore, we find it persuasive that sand and gravel excavation has a serious detrimental effect upon the use and development of the surface rights, and unlike the manner in which excavation began in the present case, under the Wests' argument such excavation could have just as easily been initiated instead by them.
Therefore, applying the interpretation which least restricts ownership of the land conveyed, as espoused in Continental Group, Inc., we find under these circumstances that the Wests failed to establish by a preponderance of the evidence that the reservation of minerals set forth in the acts of sale were intended to include sand, gravel, topsoil, and pit run.
For the foregoing reasons, the judgment of the trial court is reversed and set aside, and judgment is rendered dismissing the claims of Glen L. West, Jr., Steven A. West, and William D. West, II against Gary L. Godair and Pamela Godair, with prejudice. Costs of the trial court and this appeal are assessed equally to Glen L. West, Jr., Steven A. West, and William D. West, II.
REVERSED AND RENDERED.
NOTES
[1] Ejusdem generis is defined in Black's Law Dictionary 608 (4th ed. rev. 1968) as follows: "In the construction of ... instruments, the `ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned."